IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| ROBERT L. LOOS, | : | CIVIL ACTION |
|  | : | NO. 02-CV-3667 |
| Plaintiff, | : |  |
|  | : |  |
| v. | : |  |
|  | : |  |
| KEYSTONE SHIPPING COMPANY | : |  |
|  | : |  |
| Defendant. | : |  |

**BRIEF IN SUPPORT OF DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR RETROACTIVE AND FUTURE INCREASE OF MAINTENANCE RATE AND DEFENDANT'S COUNTER-MOTION FOR DISMISSAL PURSUANT TO FED. R. CIV. P. 12(c) AND/OR TRANSFER PURSUANT TO 28 U.S.C. 1404(a)**

**I.  STATEMENT OF FACTS**

Defendant Keystone Shipping Co. ("Keystone") is a Delaware Corporation with its main offices located in Bala Cynwyd, Pennsylvania (Ex. "A"). Keystone Barge Services, Inc. is a Delaware Corporation wholly owned by Keystone Shipping Company (*id*).

At all times relevant Keystone Barge Services, Inc. and Keystone Shipping Co. operated a fleet of four integrated tug-barge units, including the ATLANTA BAY/VIRGINIA BAY. The ATLANTA BAY/VIRGINIA BAY trades between Texas City, Texas and Cooper River, South Carolina, with occasional additional calls at Beaumont, Texas. Keystone Barge Services, Inc. chartered the tug-barge units and Keystone Shipping Co. was responsible for crewing the tug-barge units (*id*.).

Keystone is and was at all relevant times qualified to do business in Texas, and maintains an office and employees in Beaumont, Texas (*id*.).

Plaintiff was at all times relevant and continues to be a member of the District No. 1, PCD, MEBA (AFL-CIO) ("MEBA") and a resident of Jackson, Missouri. Plaintiff was employed by Defendant Keystone Shipping Co. as an Assistant Barge Engineer aboard the ATLANTA BAY/VIRGINIA BAY unit (*id*).

Keystone and all engineers employed by Keystone on the ATLANTA BAY/VIRGINIA BAY, including the Plaintiff, were subject to the terms of the Agreement of June 1, 1999, between MEBA and Keystone, which, *inter alia*, provided that any maintenance due to seamen was to be paid at the rate of $8.00 per day (Ex. "B," section 7, p.11).

Plaintiff's first complained of injury (a re-occurrence of a heart condition) occurred aboard the ATLANTA BAY in December of 1999 off of Florida. Plaintiff treated for a short period in Port Everglades, Florida, and then was sent home to Missouri for further treatment. All union contract maintenance payments of $8.00 per day due were paid from December 29, 1999 through September 18, 2000. As well, all medical costs (or "cure") was paid. Until the date this Complaint was filed, Plaintiff never protested or otherwise questioned the amount of maintenance. Since September 18, 2000, when Plaintiff was found fit for duty, there have been no further work-related complaints regarding his heart condition (Ex. "A").

Plaintiff's second complained of injury (a neck injury) aboard the ATLANTA BAY in January 2002 off of Texas City, Texas. Plaintiff did not make any complaint until April 2002, after the run was over, and treated near his home in Missouri. All union contract maintenance payments of $8.00 per day due were paid from April 14, 2002 to the present. As well, all cure has been and continues to be paid (*id*). Plaintiff's treating physician has stated he expects Plaintiff to be fit for duty on November 16, 2002 (Ex. "C"). Until the date this Complaint was filed, Plaintiff

never protested or otherwise questioned the amount of maintenance (Ex. "A").

## II.   LAW AND ARGUMENT

Plaintiff has waited nearly three years to decide that his maintenance payments, which were agreed upon between his employer and his union and fully enforceable in the jurisdictions where he sailed with Keystone, were not adequate.  He accepted payment of his contracted for maintenance checks since December of 1999 with no protest, or indeed any questions at all.  He has chosen to file suit in Pennsylvania, whose only connection with this litigation is that Keystone has its main offices here, for the sole reason that under <u>Barnes v. Andover Co. L.P.</u>, 900 F.2d 630 (3rd Cir. 1990), the Third Circuit held, in accordance with the minority view, that a seaman is not necessarily bound to maintenance rates that have been established through collective bargaining between a seaman's union and his employer if the plaintiff can prove that his living expenses exceed that rate.  It is respectfully submitted that this type of forum shopping should not be encouraged.

Other than Defendant's having offices in this District, there are no other contacts which make this District a proper one for litigating Plaintiff's claims: the most logical, convenient and practical forum for the suit is in the Southern District of Texas (Houston Division), since this is where Plaintiff's alleged January 23, 2002 injury took place, where both the tug-barge runs on which Plaintiff allegedly sustained his injuries commenced, and where Keystone also maintains an office and employees.

A.      **Plaintiff is Not Entitled to an Immediate Retroactive Increase in Maintenance Payments Since He was Paid all Maintenance Due and the Action Should be Dismissed Pursuant to Fed. R. Civ. P. 12(c)**

Plaintiff's Motion for an immediate retroactive increase in the maintenance payments already paid is without merit, since all maintenance payments to which Plaintiff was due have been fully paid and Plaintiff has waited nearly three years to suddenly assert that he is entitled to more.

It is undisputed that after Plaintiff suffered from a re-occurrence of his heart problem at the end of December of 1999, Defendant paid to Plaintiff and Plaintiff accepted $8.00 per day maintenance payments due to him under the terms of his union's and employer's collective bargaining agreement. As well, all his medical expenses have been paid. The maintenance rate negotiated for between a seaman and his union has been consistently enforced in the majority of the Circuits, including all those through which Plaintiff's tug-barge unit sailed: the Fifth Circuit (Baldassaro v. United States, 64 F.3d 206, 212 (5th Cir. 1995)), writ cert. den., 517 U.S. 1207, 134 L. Ed. 2d 929, 116 S. Ct. 1823 (1996), the Eleventh Circuit (Frederick v. Kirby Tankships, Inc., 205 F.3d 1277, 1291 (11th Cir. 2000)), writ cert. den., 531 U.S. 813, 148 L. Ed. 2d 16, 121 S.Ct. 46 (2000), and the Fourth Circuit (Roberson v. S/S AMERICAN BUILDER, 265 F.Supp. 794 (D. Va., Norfolk Div., 1967)).[1]

Plaintiff's filing in this jurisdiction is a clear effort at forum shopping. There is no basis to apply the unique rights afforded by Barnes to a Pennsylvania seaman[2] to a seaman residing in

---

[1] Holdings in other Circuits: Macedo v. F/V Paul & Michelle, 868 F.2d 519 (1st Cir. 1989); Al-Zawkari v. American S.S. Co., 871 F.2d 585, 588 (6th Cir. 1989); Gardiner v. Sea-Land Serv., Inc., 786 F.2d 943, 948 (9th Cir. 1986), writ cert. den. 479 U.S. 924, 93 L. Ed. 2d 303, 107 S. Ct. 331 (1986) (1986);

[2] Barnes was a Philadelphia resident and the analysis of what was an adequate maintenance rate was based on living expenses in this region. See Barnes, 900 F.2d 632.

Missouri, and working aboard a vessel which operates exclusively in the 5th, 11th and 4th Circuits. Application of the proper conflict of law analysis bolsters this conclusion. In a choice of law analysis, a court weighs the relevant interests of each state to the particular issue in determining what law is to be applied. Pennsylvania's choice of law procedure[3] is grounded on a significant contacts analysis, which looks to such factors as (1) the place of the injury; (2) the place of the conduct that caused the injury; (3) the domicile of the parties; and, (4) the place where the relationship between the parties is centered. Griffith v. United Air Lines, Inc., 416 Pa. 1, 203 A.2d 796, 801, 805-806 (Pa. 1964); Kirby v. Lee, 1996 U.S. Dist. LEXIS 11688 (E.D. Pa 1999). Factors (1), (2) and (4) all clearly point to 5th, 11th and 4th Circuits. Of the states within those Circuits, Texas predominates since the voyages at issue commenced there, Plaintiff's second injury and the conduct allegedly causing it occurred there, and Defendant has offices there. The only factor which would arguably point to Pennsylvania is the domicile of the parties since Keystone's main offices are here (although Plaintiff's domicile is Missouri). This conclusion is also supported by the Restatement (Second) of Conflicts of Laws, §6.

Furthermore, Plaintiff's acceptance of the maintenance payments provided to him by Defendant, beginning nearly three years ago, without protest or question constitutes an accord and satisfaction estopping Plaintiff from asserting entitlement to a retroactively increased rate. These transactions meet the elements of accord and satisfaction: a disputed debt, a clear and unequivocal payment made in full satisfaction of the debt, and acceptance and retention of payment by the offeree. See *e.g*: Goodway Marketing, Inc. v. Faulkner Advertising Assocs., Inc.

---

[3] Federal Courts faced with choice of law issues apply the choice of law rules of the forum state. Klaxon Co. v. Stentor Elec. Mfg. Co., Inc. 313 U.S. 487, 496, 85 L.Ed. 1477, 61 S.Ct. 1020 (1941); Shuder v. McDonald's Corp., 859 F.2d 266, 269 (3rd Cir. 1988).

545 F.Supp. 263, 266 (E.D. Pa. 1982)(citing Law v. Mackie, 373 Pa. 212, 95 A.2d 656 (Pa. 1953)); Snyderman v. Sovereign Federal Savingsbank, 1997 U.S. Dist. LEXIS 18223, 5 (E.D. Pa. 1997).

Plaintiff cannot reasonably assert that until the filing of his Complaint there was no "disputed debt," since the Barnes decision, the seminal case which provides the basis for his claim to increased maintenance in Pennsylvania above the contract rate, has been published since 1990 and is well known to mariners. Indeed, the fact that Plaintiff has waited nearly three years from first receiving his maintenance payments to claim that he should have been paid more provides strong evidence that his claims ought to be dismissed on the independent grounds of waiver (Linda Coal & Supply Co. v. Tasa Coal Co., 416 Pa. 97, 100, 204 A.2d 451, 453 (1964) ("A waiver is the intentional relinquishment of a known right."); Bollinger v. Palmerton Area Communities Endeavor, Inc., 241 Pa. Super. 341,354, 361 A. 2d 676, 682 (1986)) and laches, which applies to maintenance and cure claims.[4] Clearly, Plaintiff's actions (or, more precisely, inactions in accepting and not questioning the adequacy of his maintenance payments for nearly three years) has prejudiced Defendant by giving it an inaccurate basis for making business decisions concerning such things as insurance risks, wage rates, maintenance rates, and other

---

[4] Maintenance and cure claims have been held in the Third Circuit to be controlled by the doctrine of laches. Ward v. Union Barge Line Corp., 443 F.2d 565 (3rd Cir. 1970), overruled on other grounds in Cox v. Dravo Corp., 517 F.2d 620 (3rd Cir. 1975). The three year statute of limitations for maritime torts found at 46 U.S.C. 763a is used as a guidepost for measuring (see e.g., McKinney v Waterman Steamship Corp., 1990 A.M.C. 2839, 2843-44, 739 F.Supp.678, 681-682 (D.Ma. 1990), aff'd 925 F.2d 1, 191 A.M.C. 1742 (1st Cir. 1991). However, this is a flexible yardstick since mere lapse of time, although an important factor, is not determinative; the delay which will defeat a suit must in every case depend on the peculiar equitable circumstances of that case. Pacific Coast S.S. Co. v. Bancroft-Whitney Co., 94 F. 180 (9th Cir. 1899), rev'd on other grounds, The Queen of the Pacific, 180 U.S. 49, 45 L.Ed. 419, 21 S.Ct. 278.

costs affecting its operations.

Plaintiff has failed to cite any case law supporting his entitlement to a retroactive increase in maintenance rate under the circumstances of this case: where the vessel owner has paid maintenance at the contract rate beginning almost three years ago and Plaintiff accepted the payments without protest.  The cases upon which Plaintiff relies involve (1) maintenance payments at the same rate for periods of time which have not yet been paid (*i.e.*, in a serial suit for reinstatement because of medical problems which arose since the vessel owner's last payment. Said v. Rouge Steel Co., 209 Mich. App. 150, 530 N.W.2d 7659 (Mi. Ct. Ap. 1995); Sefcik v. Ocean Pride Alaska, Inc., 844 F.Supp. 1372 (D. Ak. 1993) Hughes v. Hunter Marine Transport, Inc., 1998 A.M.C. 6 (M.D. Tn. 1997)); (2) reinstatement of maintenance at a rate above that previously paid for periods of time which have not yet been paid, where no union contract exists (Ray v. Jantran, Inc., 2002 A.M.C. 1081 (E.D. Ark. 2001)); or, (3) a retroactive increase in the rate of maintenance previously paid where no union contract existed and the request was made contemporaneously (less than ten months after the maintenance became due) (Miller v. Canal Barge Company, Inc., 2001 A.M.C. 528 (E.D. La. 2000).

The Barnes case (although not cited by Plaintiff) likewise does not support Plaintiff's position, since there the Plaintiff made a very contemporaneous "expedited" request for increased benefits beyond the contract rate, within three months from date of injury.  Barnes, 900 F.2d 630, 632.

Finally, and in any event, the cases relied on by Plaintiff for the proposition that he is entitled to a retroactive increase in maintenance benefits all involve Plaintiff's who resided in the District where they instituted suit; not where, as in this case, neither Plaintiff nor his cause of

action has any connection to the forum except that Defendant maintains its offices here.

For these reasons, it is respectfully submitted that Plaintiff's Motion should be denied and that Defendant's Counter-Motion to Dismiss pursuant to Fed. R. Civ. P. 12(c) should be granted.

**B.     This Action Should be Transferred Pursuant to 28 U.S.C. §1404(a)**

28 U.S.C. §1404(a) governs transfer of a case where, as here, both the original venue and the requested venue are proper. <u>Jumara v. State Farm Insurance Co.</u>, 55 F.3d 873, 878 (3rd Cir. 1995). This section provides:

> (a) for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

Congress intended Section 1404(a) to allow "easy change of venue." <u>Piper Aircraft Co. v. Reyno</u>, 454 U.S. 235, 254, 102 S.Ct 252, 265 (1981). The statute's broad remedial purpose is "to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." <u>Van Dusen v. Barrack</u>, 376 U.S. 612, 616, 84 S.Ct. 805, 809 (1964). Under 28 U.S.C. §1404(a) this Court has discretion to transfer the claims against Keystone if the transferee district is one in which the action originally could have been brought, and the transfer will enhance the convenience of the parties and witnesses and is in the interest of justice.

In ruling on §1404(a) motions, courts "consider all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." Principal among these factors are plaintiffs choice of forum; Defendant's forum preference; whether the claim arose elsewhere; the convenience of the parties and the witnesses; the location of books and records; and, the public interest. <u>Gulf Oil</u>

Corp. v. Gilbert, 330 U.S. 501, 508-509, 91 L.Ed. 1055, 67 S.Ct. 839 (1947); Jumara v. State Farm Insurance Co., *supra*, 55 F.3d at 879; Remick v. Manfreddy, 138 F. Supp. 2d 652, 655 (E.D. Pa. 2001).

Application of these principals strongly favors transfer.

### 1. This Action Originally Could (and Should) Have Been Brought in the Southern District of Texas

In admiralty, the venue statutes do not apply. Fed. R. Civ. P. 82  Venue is proper in any District with personal jurisdiction, as determined by the state long-arm statute and principles of due process minimum contacts analysis. Ingersoll Milling Machine Co. v. J. E. Bernard & Co., 508 F.Supp. 907, 909 (N.D. 111, 1981); Denson v. United States, 99 F.Supp. 2d 792,793 (S.D. Tx. 2000). This Court is a proper venue, even though Pennsylvania has nothing to do with Mr. Loos' claim, only because Keystone's offices are here. There are no other contacts which make this District a proper one for litigating Plaintiff's claims. On the other hand, the Southern District of Texas (Houston Division) is the most logical, convenient and practical forum to litigate Plaintiff' claims since Plaintiff's alleged January 23, 2002 injury took place in that District, both the tug-barge runs on which Plaintiff allegedly sustained his injuries commenced in that District, and Keystone also maintains offices and employees in that District.

### 2. Plaintiffs' Choice of Forum

Courts normally defer to a plaintiffs choice of forum. Jumara v. State Farm Insurance Co., *supra*, 55 F.3d at 880. However, plaintiffs forum choice is given less weight if, as in this case, it is not the same as his residence, because the presumption that the forum is convenient to plaintiff is greatly reduced. Tranor v. Brown, 913 F.Supp. 388, 391 (E.D. Pa. 1996); Burstein v.

Applied Extrusion Technologies Inc., 829 F.Supp. 106, 110 (D. De.1992); Edwards v. Texeco, Inc., 702 F.Supp. 101 (E.D. Pa. 1988). The fact that Plaintiff may receive a higher rate of maintenance under the law of the forum chosen by him has no bearing. Beof v. Trinidad Corporation, et. al., 1992 U.S. Dist. LEXIS 6568, 5-6 (E.D. Pa. 1992)(case transferred to California where Plaintiff resided, and no operative facts occurred in Pennsylvania).

Plaintiff currently and at all times relevant to this litigation lived in Jackson, Missouri. Thus plaintiffs choice of forum bears little weight. It is entitled to even less weight when, as in this case, the operative events occurred elsewhere. In re Eastern District Repetitive Stress Injury Litigation, 850 F.Supp. 188, 194 (E.D.N.Y. 1994). As set forth below, none of the operative events giving rise to plaintiffs maintenance claims occurred in Pennsylvania.

### 3.    All of the Claims Arose Far From Pennsylvania

Keystone's tug-barge unit on which Plaintiff served only sails between Texas and Cooper River. It never sails in Pennsylvania. Plaintiff's first claimed injury occurred off of Port Everglades, Florida. His second claimed injury occurred off of Texas City, Texas. He never treated in Pennsylvania. Plaintiff resides in Missouri. In short, all of the operative events regarding Plaintiff's claims occurred far from Pennsylvania. Courts favor transfer to a district where the operative events occurred. Chedid v. Boardwalk Regency Corp., 756 F.Supp. 941, 944 (E.D.Va. 1991); Hernandez v, Graebel Van Lines, 761 F.Supp. 983, 989-990 (E.D.N.Y. 1991); Morales v. Navieras de Puerto Rico, 713 F.Supp. 711, 713 (S.D.N.Y. 1989); Dicken v. United States, 862 F.Supp., 91, 94-95 (D. Md. 1994). When plaintiffs chosen forum is neither his residence nor the place where the operative events occurred, as is the case here, transfer to the forum with the greatest contacts should result. See, *e.g.*, Tranor v. Brown, 913 F.Supp. 388, 391

(E.D. Pa. 1996). Plaintiff can point to no persuasive reason for this court to retain jurisdiction.

### 4. Convenience of the Parties and Witnesses and Location of Records Favor Transfer

Those witnesses whose testimony is likely to be needed will include plaintiff and his family, other employees of the Keystone tug-barge unit making the run between Texas and South Carolina during the dates of the incidents, the majority of whom live either in Texas or other states bordering the run and Plaintiff's treating physicians who are located in Florida and Missouri. Although Plaintiff lives in Jackson, Missouri, this is closer to the Southern District of Texas than to Philadelphia. The convenience of the parties favors transfer to the Southern District of Texas. This is the most logical, cost effective, and convenient place for depositions and other discovery to be conducted. Although witness convenience usually carries significant weight only if the witnesses may actually be unavailable for trial (Jumara v. State Farm Insurance Co., *supra*, 55 F.3d at 879), the weight it does carry favors transfer.

### 5. Public Interest Factors Favor Transfer

The public interest considerations include (1) administrative difficulties resulting from court congestion; (2) imposing jury duty on people of a community which has no relation to the litigation; (3) the local interest in having controversies decided at home; and (4) the avoidance of unnecessary problems in the application of foreign law. Gulf Oil Corp. v. Gilbert, *supra*, 330 U.S. at 508-509; see also, McNulty v. Cruise Shiptours, Inc., 1997 U.S. Dist. LEXIS 12728 (D. V.I. 1997).

These factors all strongly point to transfer:

> (1) Administrative difficulties/court congestion. Given that all other factors support transfer of this action and that the U.S. District Court for the Eastern

District of Pennsylvania is among the busiest in the nation, it makes sense from a strictly efficiency/best allocation of resources perspective to transfer the action to a jurisdiction which has relatively greater connections to the claims and issues.

(2)-(3)   Jury duty imposition and local interest in deciding issues here.  As set forth above, Plaintiff is not a resident of this District or of Pennsylvania.  The complained of actions took place where Plaintiff works as a seamen aboard ships plying the waters between Texas and South Carolina.  Plaintiff did not medically treat here.  There is simply no connection between Plaintiff's claims and this jurisdiction other than that Defendant has its offices here.  In short, there is no local interest to the people of this community in imposing jury duty on them and litigating claims that have little relation to their lives in this community.

(4)   Problems in the application of foreign law.  As set forth above, if this action is not summarily dismissed or transferred, the first issue facing this Court at trial will be what law should apply.  As set forth above, a proper application of the conflict of laws rules would require that the law of the 5th, 11th or 4th Circuits concerning maintenance rates, should be applied since these jurisdictions, and most clearly not the 3rd Circuit, maintain the greatest relationship to all aspects of this litigation.  The existence of this conflict of laws issue, together with the other factors favoring transfer, again strongly demonstrate why transfer in this case is the most just and rational outcome.

### III.   CONCLUSION

Mr. Loos does not live in Pennsylvania. His claims did not arise in Pennsylvania. The vessels on which he was employed never entered ports in Pennsylvania, but sailed exclusively between Texas and South Carolina. He treated in Florida and his home in Missouri. Most witnesses reside in either Texas or the southern states adjacent to the tug-barge run of the ATLANTA BAY. His claims do not affect the working of residents, seamen or otherwise, of the Commonwealth. He accepted maintenance payments beginning nearly three years ago with no complaints until the filing of this action. The only reason these claims are here is that Plaintiff is forum shopping. It is respectfully submitted that all of these factors and the interests of justice favor denying Plaintiff's Motion For Retroactive and Future Increase of Maintenance Rate and

either dismissing the action or transferring it to the Southern District of Texas (Houston Division).

               Respectfully submitted,

               MATTIONI, LTD.


Dated: November 18, 2002    BY:_____
                FAUSTINO MATTIONI, ESQUIRE
               PAUL A. KETTUNEN, ESQUIRE
               399 Market Street, Second Floor
               Philadelphia, PA 19106
               (215) 629-1600
               Attorneys for Defendant
               Keystone Shipping Company